CHARLES E. STOKES, Appellant, *v.* HENRY WESTON et al., Impleaded, etc., Respondents.

The law favors equality among children in the distribution of estates, and in case of doubtful construction of the language of a will it selects that which leads to such a result.

So, also, the law favors the vesting of estates, and in case a will contains apt words to dispose of the testator's entire estate that construction will be given to it.

The will of S. gave to his wife the use of all his property for life, the remainder to his three children, two sons who were unmarried, and a daughter who was married and had two children. The will then provided that in case of the death of the sons, or either of them, without issue then living, the share of the one so dying should be divided equally between the two grandchildren. In an action for partition of lands of which the testator died seized, and for a construction of the will, *held,* that the death referred to was that of a son during the lifetime of the testator, and as they both survived him, they, with their sister, took the entire estate, subject to the life estate of the widow.

*Mead* v. *Maben* (131 N. Y. 255), distinguished.

*Stokes* v. *Weston* (69 Hun, 608), reversed.

(Argued December 15, 1893; decided January 16, 1894; * Re-argument ordered February 6, 1894; re-argued April 18, 1894; decided June 5, 1894.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order

* See *Mem.* of decision, 141 N. Y. 558.

made June 23, 1893, which reversed a judgment in favor of defendants entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*John D. Teller* for appellant. The words of a will are to be taken in their ordinary and grammatical sense unless a clear intention to use them in another sense can be collected, and that other sense can be ascertained. (*Vernon* v. *Vernon*, 53 N. Y. 351; *Fowler* v. *Ingersoll*, 127 id. 478; *Smith* v. *Floyd*, 140 id. 337.) The expression "but in case of the death of my sons," etc., indicates that the testator had in mind the death of his sons prior to his own decease. (*Edwards* v. *Edwards*, 15 Beav. 357; *Vanderzee* v. *Slingerland*, 103 N. Y. 54.) Where a testamentary gift is made to one person, and in case of his death without issue, then to others, the death referred to will be construed to be one in the lifetime of the testator, unless the scheme of the will and the context show a different intention. (*Nelson* v. *Russell*, 135 N. Y. 127; *Vanderzee* v. *Slingerland*, 103 id. 47; *Embury* v. *Sheldon*, 68 id. 227; *Kelly* v. *Kelly*, 61 id. 47; *Livingstone* v. *Greene*, 52 id. 118; *Moore* v. *Lyons*, 25 Wend. 118; *Quackenbos* v. *Kingsland*, 102 N. Y. 123.) The estate to the testator's sons being given in clear and decisive terms, should not be allowed to be taken away by subsequent words which are not as clear and decisive as those giving the estate. (*Roseboom* v. *Roseboom*, 81 N. Y. 356; *Campbell* v. *Beaumont*, 91 id. 464; *Byrnes* v. *Stilwell*, 103 id. 453; *Embury* v. *Sheldon*, 68 id. 236; *Quinn* v. *Hardenbrook*, 54 id. 86.) A valid executory devise cannot be limited upon an absolute fee, which includes the power to dispose of the property. (*Campbell* v. *Beaumont*, 91 N. Y. 464; *Smith* v. *Van Ostrand*, 64 id. 278; *Tyson* v. *Blake*, 22 id. 558; 2 Jarman on Wills [6th ed.], 854.) Authority for this action is to be found in section 1533 of the Code of Civil Procedure, which provides that when two or more persons hold as joint tenants or as tenants in common, a

vested remainder or reversion, any one or more of them may maintain an action for partition, and a sale may be made with the consent of the life tenant. (*Stief* v. *Hart*, 1 N. Y. 20; *Riggs* v. *Cragg*, 80 id. 479 ; *Livingstone* v. *Greene*, 52 id. 118 ; *Vanderzee* v. *Slingerland*, 103 id. 47.)

*Frank S. Coburn* for respondent. The intention of the testator being plainly expressed and the wording of the will free from ambiguity, the general rule of construction should not apply. ( *Vanderzee* v. *Slingerland*, 103 N. Y. 47; *Matter of Van Zandt*, 105 id. 89 ; *Washborn* v. *Cope*, 22 N. Y. Supp. 241 ; *In re Denton*, 23 N. E. Rep. 482 ; *Nellis* v. *Nellis*, 99 N. Y. 512 ; *Burt* v. *Southwick*, 70 id. 581 ; *Mead* v. *Maben*, 131 id. 261 ; *Britton* v. *Thornton*, 112 U. S. 562.) In the case at bar, the first devisee taking a life estate, the death referred to must be deemed the death of the sons at any time. (*Mullarky* v. *Sullivan*, 136 N. Y. 227; *Fowler* v. *Ingersoll*, 127 id. 472 ; *Mead* v. *Maben*, 131 id. 261.)

BARTLETT, J. This is an action for partition and seeks, as incidental relief, a construction of the will of the late Samuel Stokes, of Auburn, Cayuga county, who died on the 24th of October, 1889. The testator left him surviving as legatees and devisees under his will his two sons, Charles E. Stokes and Alfred Stokes; a daughter, Clara McGee; a widow, Eliza Stokes, and two infant grandchildren, Henry Weston and Porter Weston, the children of his daughter Clara McGee. At the time of the testator's death his two sons were unmarried. The material portions of the will read as follows, viz.:

"*First.* I give, bequeath and devise to my wife, Eliza Stokes, in case she survives me, the use of all my property for and during the term of her natural life, which is in lieu of her dower and her set-off, and distributive share of my estate.

"*Second.* I give, bequeath and devise to my children, Alfred Stokes, Charles E. Stokes and Clara McGee, the rest, residue and remainder of my property in equal proportions, but in case of the death of my sons, Alfred and Charles E., or

either of them, without issue living at the time of his decease, then the share of the one so dying without issue shall be divided equally between my grandchildren, Henry Weston and Porter Weston." The Special Term held that the second subdivision of the will referred to the event of the death of said sons, or either of them, in the lifetime of the testator, and as they survived their father, they, with their sister, Clara McGee, were the owners in equal shares of the entire estate of the testator, real and personal, subject to the life estate of the widow. The General Term reversed the judgment, holding that the sons took a mere contingent estate in fee, liable to be reduced to a life estate, as to each of them, in the event of his dying without lawful issue living at the time of his death, whether such death occurred before or after the decease of the testator. We are of opinion that the judgment of the General Term should be reversed and that of the Special Term affirmed. In the *Matter of the N. Y., L. & W. R. Co.* (105 N. Y. 92) Judge RAPALLO said: "It may be regarded as a settled rule of construction that where there is a devise to one person in fee, and in case of his death to another, the contingency referred to is the death of the first-named devisee during the lifetime of the testator, and that if such devisee survives the testator he takes an absolute fee; that the words of contingency do not create a remainder over to take effect upon the death, at any time, of the first taker, nor an executory devise, but are merely substitutionary and used for the purpose of preventing a lapse in case the devisee first named should not be living at the time of the death of the testator. This construction is uniformly adopted unless there is some language in the will indicative of a different intention on the part of the testator. The reason assigned for this construction has been that, as death is a certain event and the time only is contingent, the words of contingency in a devise of this description can only be satisfied by referring them to a death before some particular period, and no other being mentioned, the time referred to must be presumed to have been the testator's own death. It is also founded upon the principle that,

in construing wills, effect should be given, if possible, to all the words used by the testator, and that any other construction than the one which has been adopted would in every case reduce the estate of the first-named devisee to an estate for life; for his death at some time is certain, and the words of inheritance attached to the devise to him would in every case be inoperative." The rule and its reasons thus stated have been recognized by the courts of England and this state for many years. In case of *Doe, Lessee of Lifford,* v. *Sparrow* (13 East, 359) Lord ELLENBOROUGH laid down the rule after elaborate reasoning, and in *Gee* v. *The Mayor, &c., of Manchester* (17 Adol. & Ell. 737) Lord CAMPBELL further discussed the rule and approved the reasoning of Lord ELLENBOROUGH in the case cited. (See, also, *Clayton* v. *Lowe,* 5 Barn. & Ald. 636; *Woodburne* v. *Woodburne,* 23 L. J. Ch. 336; *Moore* v. *Lyons,* 25 Wend. 118; *Livingston* v. *Greene,* 52 N. Y. 118; *Kelly* v. *Kelly,* 61 id. 47; *Embury* v. *Sheldon,* 68 id. 227; *Vanderzee* v. *Slingerland,* 103 id. 47; *Nelson* v. *Russell,* 135 id. 137.)

An examination of the cases in this court where the rule has not been applied will disclose the fact that there was some language of the testator indicating a different intention. Such a case was *Mead* v. *Maben* (131 N. Y. 255). Judge GRAY expressly rested the decision of the court, which refused to apply the rule in that case, on the special language of the testator. In the case at bar, the judge at Special Term was of opinion that the "natural import" of the language of the will referred to a death either before or after the death of the testator, but felt constrained by the rule under discussion to a different conclusion. If the will was susceptible of such a construction as the learned trial judge supposed possible, then the rule in question had no application, his decision was erroneous and the judgment of the General Term would have to be sustained. We are, however, of the opinion that there is no language of the testator indicating that he referred to the death of his sons after his own decease. The rule referred to, therefore, applies to this case and leads to a reversal.

We also hold that a fair interpretation of the language of the second subdivision of this will leads to the same result independently of this rule of construction. The will is brief and on its face manifests a clear, natural and well-considered scheme. The task the testator had in hand was to provide for his widow, two unmarried sons, and a married daughter having two children. In the first subdivision of the will he gives his wife the use of his entire estate for her life. In the second subdivision of the will, by apt language, he vests his entire estate in his two sons and daughter in equal proportions, and goes on to say, "but in case of the death of my sons, Alfred and Charles E., or either of them, without issue living at the time of his decease, then the share of the one so dying without issue shall be divided equally between my grandchildren, Henry Weston and Porter Weston." It should be remembered that the testator was, in the clause under construction, seeking to dispose of his entire estate, and having vested the title in his three children, ordinary prudence required him to guard against intestacy as to the share of a son who might die without issue before the will should take effect, as the statute protected the issue of children dying in the testator's lifetime. (2 R. S. 66, § 52; 4 R. S. [8th edition] p. 2549, § 52.) The testator thus indicated his clear intention to divide his estate equally among his children if they should survive him, but if either son died without issue before the will took effect, his share should go to the grandchildren who were males in preference to his surviving children, one of whom was a daughter. This construction gives full force and effect to all the language of the will and does equal justice to the three children of the testator. On the other hand, the construction contended for by the guardian *ad litem* of the infant grandchildren, the respondents, ignores the plain provisions of the instrument, and if sustained, would lead to an unjust and unnatural will. It would give to the daughter absolutely one-third of the estate, real and personal, while each son, one forty-two and the other forty years old at testator's death, would take a mere contingent estate in fee in one-third of the estate, liable to be

reduced to a life estate at any time by his death without issue. Such an estate is of little value either to sell or to mortgage, and while it was perfectly competent for the testator to have thus discriminated between his children, we hold that such intent must be made manifest by plain and unmistakable language, which is not to be found in the subdivision of the will we are now construing.

The law favors equality among children in the distribution of estates, and in cases of doubtful construction it selects that which leads to such a result. Furthermore, the law favors the vesting of estates; in the will before us there are apt words bequeathing and devising the entire estate in equal proportions to the three children of the testator, and our construction of the language that follows gives full force and effect to these words of bequest and devise. (*Embury* v. *Sheldon*, 68 N. Y. 236; *Roseboom* v. *Roseboom*, 81 id. 356; *Campbell* v. *Beaumont*, 91 id. 464; *Byrnes* v. *Stilwell*, 103 id. 453.) We are satisfied this construction of the will is in strict accordance with the testator's intentions, and is perfectly just to his surviving children.

The judgment of the General Term is reversed and the judgment of the Special Term affirmed, with costs to the appellant in all the courts.

All concur, except GRAY, J., dissenting.

Judgment accordingly.