(10 App. Div. 572.)

TOMPKINS v. VERPLANCK et al. VERPLANCK v. TOMPKINS et al. In re TOMPKINS' ESTATE.

(Supreme Court, Appellate Division, Second Department. December 8, 1896.)

1. WILLS—CONSTRUCTION—NATURE OF ESTATE DEVISED.

Testator bequeathed his estate in trust during the lives of his wife and son, or the survivor of them, the income to be divided equally between his wife, son, and daughter, or the lawful descendants of the son and daughter,

if either should die before the wife. On the death of the wife and son, the estate should pass in fee to the son and daughter or their descendants. *Held*, that the beneficiaries took as tenants in common, and not as joint tenants.

2. SAME—VESTING OF ESTATE IN REMAINDER.
　　The devise in remainder vested in the son and daughter at the death of the testator, subject only to be divested in event of their having descendants.

Appeals from special term and surrogate's court, Westchester county.

Action by Jotham S. Tompkins against David Verplanck, executor of the estate of Joseph W. Tompkins, deceased, and Stephanie Morel, executrix of the estate of Emile Morel, deceased, to obtain a construction of the will of Joseph W. Tompkins. With this was consolidated an action brought by David Verplanck as executor against Jotham S. Tompkins and Stephanie Morel, executrix, etc., for the same purpose. From a judgment construing the will, the defendant Stephanie Morel appeals. Reversed.

Petition to the surrogate by Stephanie Morel, executrix of the estate of Emile Morel, to compel the payment to her of her alleged share of the income of the trust estate created by the will of Joseph W. Tompkins, deceased. From a decree in favor of the petitioner, David Verplanck, executor, and Jotham S. Tompkins appeal. Affirmed.

Argued before BROWN, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Abel Crook, for David Verplanck, executor, respondent in the supreme court action, and for the appellant in the proceeding before the surrogate.

William L. Snyder, for Jotham S. Tompkins, respondent in the supreme court action, and for the appellant in the proceeding before the surrogate.

V. Wright Kingsley and F. J. Worcester, for Stephanie Morel, executrix, appellant in the supreme court action, and respondent in the proceeding before the surrogate.

CULLEN, J. The two actions in the supreme court were brought for substantially the same purpose,—the construction of the will of Joseph Warren Tompkins, deceased. These actions were consolidated by stipulation, and a single judgment entered therein. The proceeding before the surrogate was instituted to compel David Verplanck, as executor of and trustee under said will, to pay over to the petitioner, Stephanie Morel, as executor, one-half of the income of certain trust funds created by said will. Joseph W. Tompkins died in 1874, leaving him surviving his widow, Sarah W. Tompkins, and two children, Jotham S. Tompkins and Marion W. Tompkins. Sarah W. Tompkins died in 1885. Marion W. Tompkins died in 1889, unmarried, and without issue. By her will she gave to one Emile B. Morel all her estate, real and personal. Morel died on the 16th day of April, 1894, leaving a will, by which his widow, Stephanie Morel, was made sole executor thereof, and his sole heir and legatee. The only portions of the will of Joseph

Warren Tompkins material to the controversy now before us, and which require construction, are the following:

"Sixth. My house and lot in the city of New York, known as 'No. 15 Wall Street,' I give and devise to my said executors, with everything appertaining thereto, with power to take possession of, occupy, rent out, and keep in repair, and receive the rents, issues, and profits thereof as if they were owners thereof, during the lives of my wife, Sarah Jotham, and my son Jotham, but upon the express trusts and condition that during the said lives, or that of the longest liver of them, my said executors, as often as received, pay and distribute in equal parts the net rents of said house and lot to my said wife, Sarah Walton, my daughter, Marion, and my son, Jotham, or the lawful issue or descendants of my said son or my said daughter, if either should die before my said wife, such descendants receiving the share of their parent; and at the decease of my said wife and son Jotham to deliver up to my said two children or their descendants the said house and lot, which is then to belong to them in fee; but, inasmuch as by fire, accident, or change in the city of New York it may be expedient and necessary or greatly to the interest of my estate during the lives of my said son and wife, or longest liver of them, to sell and convey said house and lot, No. 15 Wall street, in fee, in that event I authorize my said executors to apply to the supreme court, and upon proof to said court of the propriety and necessity of said sale to its satisfaction, I authorize said court to direct a sale thereof by my said executors in fee, and the moneys arising from the sale thereof to be invested upon interest by my said executors until the death of my said wife and son, or the longest liver of them, and the interest and income thereof paid in equal shares to my said wife and son and daughter as aforesaid, and, at the death of the longest liver of my said wife and son, the principal to be equally divided between my said son and daughter or their lawful descendants."

"Eighth. All the moneys arising from the sales of my said real and personal property in this, my will, ordered to be sold, and not in this will otherwise disposed of, after payment of all my just debts and liens on my said real estate and the legacy aforesaid, I order my executors to invest and keep invested on interest on bond and mortgage on real estate in the state of New York, in the stocks or bonds of the state of New York or of the United States, at the best interest they can obtain for the same during the life of my said wife and son, or the longest liver of them, and as often as received to pay and divide equally the said interest between my said wife and son and daughter."

The will contains no residuary clause, and makes no further final disposition of the testator's estate, other than those prescribed in the sixth and eighth clauses. The Wall street property was sold, in the year 1883, under the authority given by the will. As to the effect of these testamentary provisions, the learned trial judge of this court and the surrogate have reached opposite conclusions. Both courts held that by the two clauses cited a valid trust of the whole property passing under the clause was created, which would terminate only with the death of Jotham S. Tompkins. This determination was correct, and is not seriously assailed on this appeal by either party. The first question, therefore, that arises is as to the rights of the parties in the income of the trust funds. The terms of the gift of the income of the two funds are substantially the same,—that of the fund under the sixth clause being, "the interest and income thereof, paid in equal shares to my said wife and son and daughter as aforesaid"; that of the eighth clause being, "and as often as received to pay and divide equally the said interest between my said wife and son and daughter,"—and the same rules of law apply to both. As the income is to be divided equally between the beneficiaries, the gift is not to the beneficiaries as joint tenants, nor as a class, but to them as tenants in common. 2

Jarm. Wills, 257; Embury v. Sheldon, 68 N. Y. 227; Delafield v. Shipman, 103 N. Y. 463, 9 N. E. 184. It follows that on the death of any of the beneficiaries her share did not go to the survivors, but was undisposed of, and the right to it passed, under the provisions of the Revised Statutes (1 Rev. St. 726, § 40):

"When, in consequence of a valid limitation of an expectant estate, there shall be a suspension of the power of alienation or of the ownership during the continuance of which the rents and profits shall be undisposed of, and no valid direction for their accumulation is given, such rents and profits shall belong to the person presumptively entitled to the next eventual estate."

The language directing the disposition of the income in this case is so similar to that of the will in Delafield v. Shipman, supra, as to render the latter case not only conclusive on the question here involved, but to forbid its further discussion. Hence, to determine who is entitled to the surplus income of the trust funds, we must see who are presumptively entitled to the next eventual estate in the corpus of the trust.

In the sixth clause of the will the testator directs that the fund arising from the sale of the Wall street property shall, at the death of the longest liver of his wife and son, be equally divided between said son and daughter or their lawful descendants. The gift to the son and daughter unquestionably is, both under our statute and at common law, a gift to them as tenants in common, so the survivor could not take the whole. In re Kimberly's Estate, 150 N. Y. 90, 44 N. E. 945; Delafield v. Shipman, supra. The words, "or their lawful descendants," are, under the present rule, to be construed as creating a gift by substitution in case of the death of the first legatee or devisee. 1 Jarm. Wills, 481. If the gift is immediate, a death in the lifetime of the testator; if the gift is after a life estate, a death during the life of the life tenant. 2 Jarm. Wills, 1571. In this case, therefore, the substituted gift would take effect in case the daughter, Marion, left descendants; but Marion left no descendants. There have been one or two cases in which, under the peculiar circumstances of the testator and the language of the will, the courts have extended the term "descendants" to include collaterals, but this is not the rule. "Neither her brother nor sister can take under the term 'descendants.' 'Descendants' does not mean next of kin or heirs at law generally, as these terms comprehend those as well in the ascending as in the descending line, and collaterals; but it means, what the word obviously imports, the issue of the body of the persons named, of every degree, as children, grandchildren, and great-grandchildren." Daly, J., in Hamlin v. Osgood, 1 Redf. (Surr.) 409. See, to same effect, 2 Jarm. Wills, 944. This will is devoid of any language or circumstance which would justify extending the term "descendants" beyond its proper meaning. The brother, Jotham, also has had no issue. Therefore, without discussing the question whether the term "their descendants" is here to be construed collectively or distributively,—that is to say, whether the descendants of either could, under any circumstances, take the whole of the estate, and not the half of which their parent received the income,—there are no persons now in ex-

istence who can take the substituted gift. We are therefore relegated to the question whether the gift to Marion and Jotham upon the termination of the trust estate is vested or contingent. The counsel for the trustee contends that there are no words of present gift, but simply a direction for future division; that hence, under the well-known rule applicable to such cases, the gift or devise is not vested, but contingent upon the survival of the legatee or devisee at the time of the distribution. We have so recently discussed this rule and its exceptions (Shangle v. Hallock, 6 App. Div. 55, 39 N. Y. Supp. 619) that it would be idle to now repeat the discussion. We are inclined to believe that this case falls within the exception, and not within the rule, and the reason of our opinion is this: On the termination of the trust by the death of the longest liver of the testator's wife and son, the principal is to be divided between his son and daughter or their lawful descendants. It is entirely possible that one may be possessed of an estate which is not to vest in possession until after his own demise. Such an estate is substantial property, for he may alien or devise it. But it is impossible that there can be an estate contingent upon the survival by one of his own decease. If the devises to the two children were to be contingent on the devisee's surviving at the termination of the trust, the direction of the testator for the division of his property, as to his son, was simply absurd. But, if the remainders were to be vested subject only to be divested in favor of descendants, in case the devisee should leave descendants, then the testamentary direction is wholly reasonable and natural. We are of opinion that this latter construction must, therefore, prevail. In this view, Marion's remainder was not divested by her death, but passed under her will to her devisee, and from him to his executor, the defendant Stephanie Morel. Whether it would be divested by the subsequent birth of issue of Jotham, it is unnecessary to determine. Such an event would have no effect on the disposition of the surplus income accruing prior to the occurrence of the event. Jotham is 73 years old, and it is entirely probable that he may never have issue, and that the question may never actually arise. We think it unwise to decide it now.

But, if I should be wrong in the view that the gifts to Marion and Jotham vested on the death of the testator, subject only to be divested in favor of the descendants, I cannot see that it would produce any substantial change in the result as to the rights of the parties. If the gifts are contingent, the one to Marion has already failed by her decease, and the one to Jotham must fail by the impossibility of his surviving himself. Of course, I state this in the absence of descendants, of whom there are now none. It follows that the testator has died intestate as to the remainder after the termination of the trust term. From this point this trust may be considered in connection with the trust under the tenth clause, for as to the latter the testator unquestionably died intestate as to the remainder after the trust term. The learned trial judge fell into an error in his view as to the effect of the intestacy of the testator. Because the intestacy was that of a remainder, he seems to have been

under the impression that the heirs at law of the testator could only be ascertained at the termination of the precedent estate. When the testator died, any interest or estate undisposed of by his will passed at that instant to his heirs at law or next of kin by virtue of the statute of descent or distribution. There is a class of cases, of which Delaney v. McCormack, 188 N. Y. 174, and In re Baer, 147 N. Y. 348, 41 N. E. 702, are examples, where, under a will, the heirs at law or next of kin of a person are to be determined at a time other than that of his decease. But in such cases the estate passes wholly by virtue of the will as a devise or bequest, and not by virtue of the statutes of descent or distribution. The remainder in these trust funds, after the death of Jotham and the death of Marion (in case she died before Jotham) without descendants, descended to Jotham and Marion, as the testator's heirs at law. Such remainder was alienable, devisable, and descendible. Sheridan v. House, *43 N. Y. 569; Moore v. Littel, 41 N. Y. 66; Jackson v. Littell, 56 N. Y. 108. Marion's estate passed by her will to Morel, and by the will of the latter to the defendant Stephanie Morel. She is, therefore, "the person presumptively entitled to the next eventual estate."

It has occurred to me that in case of intestacy it might be insisted that, as there is but a single trust of the whole fund, and not of shares, Jotham, as well as Stephanie Morel, might be considered as a "person presumptively entitled to the next eventual estate." Whatever force there might be in that contention, considered as an original proposition, I am inclined to think it is disposed of by the decisions in Embury v. Sheldon and Delafield v. Shipman, supra. In both of these cases the trust was a single and entire one, not only in form, but in fact, and not of separate shares liberated from time to time at the death of different persons. It was there held that the person presumptively entitled to a share in the corpus of the estate was entitled to the whole surplus which accrued by the death of the person to whom he succeeded. I cannot see that there is any distinction in principle between the case of one who, by virtue of the instrument founding the trust, is entitled at its termination to a share in the corpus, and one who acquires a similar right by operation of law. We think, therefore, that the defendant Stephanie Morel is entitled to the whole surplus income.

The judgment in the action in this court should, therefore, be reversed, and judgment entered construing the will in accordance with this opinion, and the decree of the surrogate should be affirmed, with costs of this appeal to all parties to be paid out of the estate. All concur.